In re SENECA INVESTMENTS LLC.

Seneca Investments LLC, Counterclaim Plaintiff,

v.

Michael P. Tierney, Counterclaim Defendant.

Seneca Investments LLC, Third–Party Plaintiff,

v.

PGNT Management LLC and Nikita Group LLC, Third–Party Defendants.

Civil Action No. 3624–CC.

Court of Chancery of Delaware.

Submitted: July 18, 2008.
Decided: Sept. 23, 2008.

David L. Finger, of Finger & Slanina LLC, Wilmington, Delaware, Attorney for Plaintiff.

J. Travis Laster, Matthew F. Davis, and Eric D. Selden, of Abrams & Laster LLP, Wilmington, Delaware, Attorneys for Defendant.

## OPINION

CHANDLER, Chancellor.

Before me is a motion for judgment on the pleadings filed by respondent Seneca Investments, LLC ("Seneca" or the "Company") in response to a petition for dissolution. Petitioner, the former Chief Executive Officer of Seneca, Michael P. Tierney, is seeking judicial dissolution of Seneca, which is in turn pursuing counterclaims against Tierney. Petitioner argues that the Court of Chancery should decree dissolution of Seneca because the Company is functioning only as a passive investment vehicle and has conducted limited active business over the past several years. The Court of Chancery has limited statutory power to order the dissolution of an LLC. Under 6 *Del. C.* § 18–802 the Court can dissolve an LLC if it is no longer reasonably practicable to carry on the business of the LLC in conformity with the LLC agreement. As a corollary, the Court of Chancery also has limited statutory authority to order the dissolution of a corporation under 8 *Del. C.* § 226(a)(3) when a corporation has "abandoned its business" and failed to dissolve, liquidate or distribute assets within a reasonable time.[1] Because petitioner has failed to allege sufficient facts to sustain a claim that the Court should exercise its narrowly

---

1. As explained below, § 226(a)(3) only applies to Seneca because the parties contractually agreed that the LLC would be governed as a corporation and that Delaware General Corporation Law would apply.

defined statutory authority to dissolve Seneca, I conclude that the petition for dissolution should be dismissed.

## I. BACKGROUND

Seneca is a Delaware Limited Liability Company formed in May 2001. Michael P. Tierney and Omnicom Group, Inc., a large publicly traded New York corporation, are shareholders of Seneca.[2] Tierney was designated the Chief Executive Officer of Seneca at its formation in May 2001. Tierney was also the sole director of Seneca from May 2001 to March 31, 2004, after which time Tierney was one of three directors. Seneca has since informed Tierney that he has been removed as both an officer and director of Seneca effective February 27, 2008.

An LLC is primarily a creature of contract, and the parties have wide contractual freedom to structure the company as they see fit. Seneca's organizers decided that Seneca should be governed by the Delaware General Corporation Law (the "DGCL"), subject to certain express exceptions. Section 1.2 of the Restated Organization and Operating Agreement (the "Operating Agreement") states that, subject to certain exceptions, "the Company will be governed in all respects as if it were a corporation organized under and governed by the Delaware General Corporation Law . . . and the rights of its Stockholders will be governed by the DGCL." Thus Seneca has two organizational documents: an Operating Agreement and a charter. According to the purpose clause in Seneca's charter, "the purpose of the Company is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law."[3]

On March 17, 2008, petitioner filed a petition for dissolution asking this Court to order the dissolution of Seneca under § 18–802 and § 226(a)(3). Along with the answer, respondents made several counterclaims against Tierney, Nikita Group LLC ("Nikita"), and PGNT Management LLC ("PGNT") alleging, among other things, conversion and unjust enrichment.[4] Seneca alleges that Tierney unlawfully funneled money from Seneca to himself through Nikita and PGNT. The facts surrounding the counterclaims are not directly relevant to this decision.

The petition for dissolution alleges that Seneca has abandoned its business and should therefore be dissolved. Petitioner alleges that, since March 31, 2004, Seneca has not: (1) had a business plan; (2) made an investment; (3) sought or received additional capital; (4) sought to sell any shares; (5) had a shareholders' meeting; (6) had a meeting of the board of directors; or (7) sought to hire an employee or manager who could conduct any business on behalf of the corporation. Additionally, no director or shareholder has proposed: (1) any business or investment for Seneca; (2) that Seneca find a buyer for itself; or (3) that Seneca raise additional capital, incur debt, hire employees, or rent offices. Seneca's only assets since March 31, 2004 are: (1) approximately $2.2 million in cash; (2) 2,123,637 shares of Taleo, Inc., a publicly traded company; and (3) a minority interest in Media Space Solutions, a private internet marketing company.

---

**2.** The parties present somewhat different pictures of the past and present ownership structure of Seneca. Because this is a decision on a motion for judgment on the pleadings the court accepts as true petitioner's well pleaded facts.

**3.** Pet. for Dissolution of Michael P. Tierney ¶ 69.

**4.** This Opinion does not address Seneca's counterclaims.

## II. ANALYSIS

### A. Standard of Review

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[5] "A party is entitled to judgment on the pleadings when," accepting as true the nonmoving party's well pleaded facts, "there is no material fact in dispute and the moving party is entitled to judgment under the law."[6] The Court must accept the nonmoving party's well pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party.[7] The nonmoving party must therefore be accorded "the same benefits as a plaintiff defending a motion under [Court of Chancery] Rule 12(b)(6)."[8] While the nonmoving party is entitled to "all reasonable inferences that logically flow from the face of the complaint,"[9] the "[C]ourt is not ... required to accept as true conclusory allegations 'without specific supporting factual allegations.'"[10] Additionally, "the trial court is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[11] Thus petitioner will only survive the motion for judgment on the pleadings if the motion for dissolution contains "enough facts to plausibly suggest" that Tierney is entitled to the relief of dissolution.[12]

The role of the Court in this matter is to examine the petition and determine if sufficient facts are alleged to "plausibly suggest" that petitioner will be entitled to the relief that he seeks. As explained below, even under the favorable Rule 12(c) standard, the petition fails to allege sufficient facts to survive the motion for judgment on the pleadings. Because Seneca is an LLC and has chosen to adopt the DGCL in its Operating Agreement, I address petitioner's request for dissolution under § 18–802 and § 226(a)(3).

### B. Section 18–802

The Court of Chancery may decree dissolution of an LLC under § 18–802 "whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement." In the absence of extensive case law interpreting § 18–802, the courts look to the analogous limited partnership dissolution statute.[13] The Court of Chancery has or-

---

**5.** Ct. Ch. R. 12(c).

**6.** *Warner Commc'ns, Inc. v. Chris–Craft Indus. Inc.*, 583 A.2d 962, 965 (Del.Ch.1989), *aff'd*, 567 A.2d 419 (Del.1989); *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del.1993).

**7.** *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499–500 (Del.Ch.2000); *Desert Equities*, 624 A.2d at 1205 ("In determining a motion under Court of Chancery Rule 12(c) for judgment on the pleadings, a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party.") (citation omitted); *Chris–Craft*, 583 A.2d at 965 ("[T]he nonmoving party is entitled to the benefit of any inferences that may fairly be drawn from the nonmoving party's pleading.").

**8.** *McMillan*, 768 A.2d at 500.

**9.** *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del.2001).

**10.** *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del.2006) (citation omitted).

**11.** *Malpiede*, 780 A.2d at 1083.

**12.** *Desimone v. Barrows*, 924 A.2d 908, 929 (Del.Ch.2007) (noting that the United States Supreme Court has now "embraced the pleading principle that Delaware courts have long applied"). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007).

**13.** *See In re Silver Leaf, L.L.C*, C.A. No. 20611, 2005 WL 2045641, at *10 (Del.Ch. Aug. 18, 2005) ("Without much case law applying [§ 18–802], the court looks by analogy to the

dered dissolution in situations where there was "deadlock" that prevented the corporation from operating [11] and where the defined purpose of the entity was fulfilled or impossible to carry out.[15]

■ Since there is no allegation in the petition that Seneca is mired in a voting deadlock, the inquiry must focus on whether it is now impracticable for Seneca to fulfill its business purpose. In determining whether it is reasonably practicable to carry on the business of the LLC, the Court must look to the purpose clause set forth in the governing agreements, in this case, the charter.[16] Seneca's charter states that "the purpose of the Company is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law." This Court has clearly stated that "a corporation may be formed and maintained as a passive instrumentality—for example, an entity that does no more than take and hold title to tangible investments is a commonly encountered phenomenon." [17]

Petitioner has failed to allege sufficient facts to support a claim that it is not reasonably practicable for the company to carry on business in conformity with the Operating Agreement. Petitioner does not allege any kind of voting deadlock, and the factual claims in the petition are insufficient to support a claim that the "reasonably practicable" standard under § 18–802 has been met. The petition states that the Company is holding shares of Taleo and a minority position in Media Space Solutions. In effect petitioner has done nothing more than allege that Seneca is functioning as a passive instrumentality that is holding title to assets, a corporate function that is both lawful and common.

■ Petitioner's other arguments based on Seneca's inactivity are, therefore, unavailing. Petitioner argues that dissolution is proper because Seneca has failed to comply with certain provisions of the Operating Agreement that allegedly require, among other things, that the Company make certain cash distributions, provide reports to the Company's stockholders, and continue to allow Tierney to serve as a director. Even assuming that Seneca is in violation of some provisions of its operating agreement, such violations are not grounds for this Court to order dissolution of an LLC. The role of this Court in ordering dissolution under § 18–802 is limited, and the Court of Chancery will not attempt to police violations of operating agreements by dissolving LLCs. This Court will also not attempt to divine some

dissolution statute for limited partnerships, 6 Del. C. § 17–802, which contains essentially the same wording as the LLC statute.") (citation omitted).

14. See Silver Leaf, 2005 WL 2045641, at *11 (ordering dissolution of an LLC where "[t]he vote of the members is deadlocked"); Haley v. Talcott, 864 A.2d 86, 89 (Del.Ch.2004) (ordering dissolution of an LLC where there was "indisputable deadlock between the two 50% members of the LLC").

15. See PC Tower Ctr., Inc. v. Tower Ctr. Dev. Assocs. Ltd. P'ship, C.A. No. 10788, 1989 WL 63901, at *6 (Del.Ch. June 8, 1989) (ordering dissolution of a limited partnership where the purpose of the partnership was to acquire and operate certain real property and that purpose was frustrated because the sole lessee of the property became insolvent and market conditions made finding a new tenant "practically impossible").

16. See Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv., C.A. No. 13389, 1996 WL 506906, at *3 (Del.Ch. Sept. 3, 1996) (looking to the purpose clause in the partnership agreement to determine the purpose of the partnership); PC Tower Ctr., 1989 WL 63901, at *5 (same).

17. Giancarlo v. OG Corp., C.A. No. 10669, 1989 WL 72022, at *4 (Del.Ch. June 23, 1989).

other business purpose by interpreting provisions of the governing documents other than the purpose clause.

■ Petitioner also argues that a provision in the Operating Agreement requires Seneca to liquidate and prohibits any business activity by Seneca other than liquidating assets and distributing cash to shareholders. Section 2.2 of the Operating Agreement states that "[d]istributions of available cash for any Fiscal Year shall be made to the Stockholders in accordance with the number of Common Shares held by each." I am unconvinced by petitioners strained attempt to characterize this provision as preventing any action other than liquidation. Petitioner offers no support for the claim that this provision should be read to prevent any business activity other than liquidation or that the provision mandates distribution of any and all cash held by the corporation.

Petitioner correctly states that a court should not decide between reasonable interpretations of a contract provision on a motion for judgment on the pleadings.[18] Petitioner fails, however, to appreciate a key aspect of this requirement—the reasonableness component. According to the Delaware Supreme Court, "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.... Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room

for uncertainty."[19] Petitioner's interpretation of § 2.2 as preventing Seneca from conducting any business other than liquidation is not a reasonable interpretation of that provision. No reasonable interpretation of § 2.2 would require Seneca to distribute any cash it held, including, as petitioner claims, cash raised from borrowing money or raising new capital. Rather than mandating distribution of all cash held by Seneca, § 2.2 of the Operating Agreement merely specifies that any cash determined to be "available cash" is to be distributed to common shareholders according to the number of shares held. Nothing in § 2.2 supports petitioner's interpretation that the only business Seneca is allowed to conduct is liquidation and distribution of cash.[20]

Even after taking petitioner's well pleaded facts as true and making all reasonable inferences in favor of the petitioner, there is no material fact in issue under the § 18–802 analysis that warrants denying respondent's motion for judgment on the pleadings.

## C. Section 226(a)(3)

■ The Court of Chancery has the power to appoint a custodian or receiver for a corporation under § 226(a)(3) when "[t]he corporation has abandoned its business and has failed within a reasonable time to take steps to dissolve, liquidate or

---

**18.** See *Appriva S'holder Litig. Co. v. EV3, Inc.*, 937 A.2d 1275, 1289 (Del.2007); *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del.1996); *Monier, Inc. v. Boral Lifetile, Inc.*, C.A. No. 3117–VCN, 2008 WL 2168334, at *5 (Del.Ch. May 13, 2008); *Seidensticker v. Gasparilla Inn, Inc.*, C.A. No. 2555–CC, 2007 WL 4054473, at *3 (Del.Ch. Nov. 8, 2007).

**19.** *Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992).

**20.** Even assuming petitioner's interpretation is correct and § 2.2 requires distribution of all cash held by Seneca, there is still nothing in the provision that would require Seneca to sell its current holdings to generate additional cash. Thus, Seneca would still be able to conduct business under petitioner's interpretation of § 2.2 by continuing to hold its current non-cash assets.

distribute its assets." Appointing a receiver for a solvent corporation is a radical remedy and should only be taken when the petitioning party has "rather plainly shown his entitlement to it." [21]

■ This Court has clearly held that the phrase "its business" under § 226(a)(3) means the business of the company as articulated in the purpose clause of its charter.[22] Seneca's charter authorizes the Company to engage in "any lawful action for which corporations may be organized" under the DGCL. It is well settled that a corporation can lawfully function as a passive holding company.[23] Although it is possible for directors to forfeit control of assets by ceasing to manage them, "waiting to see if an opportunity presents itself to realize a return on its investment" is "a rational, lawful use of the corporate form." [24] In *Giancarlo,* the Court held that the corporation's passive strategy of holding a patent, its sole asset, and awaiting future developments that might allow a return on investment was not an irrational strategy.[25] By analogy, it is certainly not irrational for Seneca to passively hold investments in other companies and wait to realize a return on those investments.

In *Giancarlo,* the Court held that dissolution under § 226(a)(3) is not proper when "the board asserts in good faith a plausible explanation for corporate inactivity that relates to a rational, lawful use of the corporate form." [26] Petitioner argues that this language requires the board to assert a defense to prevent liquidation and that the issue could only be decided after discovery and trial. This argument is unavailing. It was not the intention of the *Giancarlo* Court to say that when a shareholder petitions for dissolution of a passive holding company there will have to be discovery and a trial in which the board will be forced to defend its policies. A trial is not necessary for this Court to determine that passively holding investments in other companies is a permissible and appropriate use of the corporate form. The facts alleged in the petition are sufficient to show that Seneca is performing a valid corporate function—passively investing in other businesses.

■■ In addition to functioning as a passive holding company, Seneca is pursuing counterclaims against Tierney, PGNT, and Nikita. Pursuing legal claims is an acceptable, and common, corporate function.[27] In *Apple Computer,* the Court held that the company was engaged in legitimate business activity by pursuing an action against two director defendants and the Chief Operating Officer.[28] Seneca is engaging in acceptable corporate activity by pursuing claims against Tierney, PGNT, and Nikita. Petitioner's attempt

---

21. *Giancarlo,* 1989 WL 72022, at *3.

22. *Id.* at *2. (" '[I]ts business' does not refer to any original intention more narrow than the purposes clause of a corporation's charter."). This court has held that such an interpretation is required to prevent incongruity with 8 *Del. C.* § 102(a)(3) that permits a corporation to be formed to "engage in any lawful activity." *See Rosan v. Chicago Milwaukee Corp.,* C.A. No. 10526, 1990 WL 13482, at *5 (Del.Ch. Feb. 6, 1990).

23. *Giancarlo,* 1989 WL 72022, at *4.

24. *See id. See also Apple Computer, Inc. v. Exponential Tech., Inc.,* C.A. No. 16315, 1999 WL 39547, at *9 (Del.Ch. Jan. 21, 1999) (holding that dissolution is not proper if the "the business is still active (or passively investing) in one legitimate line of business").

25. *Giancarlo,* 1989 WL 72022, at *4.

26. *Id.*

27. *See Apple Computer,* 1999 WL 39547, at *10.

28. *Id.*

to distinguish *Apple Computer* is unsuccessful. Pursuing claims filed after a petition for dissolution is acceptable and legitimate business activity. The filing of a petition for dissolution does not mean that any subsequently filed legal claims are no longer authorized and legitimate business activity. I am cognizant of the possibility that a company facing a petition for dissolution would file non-meritorious counterclaims in order to avoid possible judicial dissolution. Such abuse, however, does not appear to be present in this case, and the courts can develop mechanisms to police such abuse should it arise in the future.[29]

The result in *Silver Leaf* does not change the finding of the Court that pursuing claims is legitimate business activity that can defeat a petition for dissolution. In *Silver Leaf*, the Court ordered dissolution of a deadlocked LLC (two 50% owners) notwithstanding the fact that LLC was pursuing claims.[30] The Court found that dissolution was appropriate because it was possible for a court appointed receiver to prosecute the claims.[31] Thus, the Court found that the pursuit of claims is not enough to stop a court from dissolving a deadlocked LLC under § 18–802. This result, however, is consistent with the rule that the pursuit of claims by a non-deadlocked LLC is sufficient business activity to prevent a court from decreeing dissolution under § 18–802.

Petitioner's other arguments based on Seneca's inactivity are unavailing in light of the fact that Seneca is engaged in legitimate business activity consistent with its stated purpose. Petitioner's allegations that Seneca has no employees, premises, or business plan, even if proven true, do not demonstrate that Seneca has "abandoned its business." There is no requirement that a corporation must have a business plan, make new investments, hire employees, or seek to find a buyer. As stated above, the DGCL permits a corporation to function as a passive holding company.[32] Additionally, the DGCL specifically states in § 211(c) that a failure to hold the annual meeting "shall not affect otherwise valid corporate acts or work a forfeiture or dissolution of the corporation except as may otherwise be specifically provided."[33]

Even after taking petitioner's well pleaded facts as true and making all reasonable inferences in favor of the petitioner, there is no material fact in issue under the § 226(a)(3) analysis that warrants denying respondent's motion for judgment on the pleadings.

### III. CONCLUSION

This case required the Court to examine the petition for dissolution in a favorable light under the Rule 12(c) standard. Petitioner's well pleaded facts were accepted as true and reasonable inferences were

---

29. The possibility of abuse in this context may indeed be remote. In the LLC context courts have generally only granted dissolution in the case of deadlock or where there is a narrowly defined business purpose. Also, in the corporate context under § 226(a)(3), courts are extremely hesitant to dissolve a solvent corporation in the absence of a limiting purpose statement. A truly deadlocked company would not be able to bring counterclaims, and counterclaims may be outside the scope of permissible activity of a company that has a limiting purpose clause.

30. *Silver Leaf*, 2005 WL 2045641, at * 11.

31. *Id.*

32. *Giancarlo*, 1989 WL 72022, at *4.

33. 8 *Del. C.* § 211(c).

made in favor of the petitioner. Even under this favorable standard, petitioner alleged no facts that would compel this Court to grant the petition for dissolution. The petition merely alleged that Seneca is functioning as a passive holding company, a function that is both common and legitimate for corporations and LLCs.

For the foregoing reasons, the petition for dissolution is dismissed.

IT IS SO ORDERED.

