# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DECCO U.S. POST-HARVEST, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018–0100–JTL |
| | ) | |
| MIRTECH, INC., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ESSENTIV LLC, | ) | |
| | ) | |
| Nominal defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 11, 2018
Date Decided: November 28, 2018

Brock E. Czeschin, Sara C. Hunter, Angela Lam, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; John M. Williamson, Rajeev Gupta, Karthik Kumar, FINNEGAN, HENDERSON, FARABOW, GARRET & DUNNER, LLP, Washington, D.C.; *Counsel for Petitioner.*

Glenn A. Brown, REAL WORLD LAW, P.C., Wilmington, Delaware; *Counsel for Respondent.*

**LASTER, V.C.**

1-Methylcyclopropene ("1-MCP") is a gas used to delay the ripening of fruit and other produce. MirTech, Inc. claimed to own intellectual property rights in 1-MCP.

In April 2016, MirTech and Decco U.S. Post-Harvest, Inc. ("Decco") established a joint venture to commercialize products based on 1-MCP. As the vehicle for their venture, they formed a Delaware limited liability company called Essentiv LLC (the "Company"). As part of the business arrangement, MirTech granted the Company a license to use its intellectual property rights in 1-MCP.

Non-party AgroFresh Inc. disputed whether MirTech owned any intellectual property rights in 1-MCP. In September 2017, MirTech settled litigation brought by AgroFresh. In the settlement agreement, MirTech agreed that AgroFresh owned the intellectual property rights which MirTech had licensed to the Company.

After learning of this development, Decco brought this proceeding to dissolve the Company. Decco proved at trial that it is not reasonably practicable for the Company to carry on its business given that MirTech has agreed that it does not own the intellectual property rights the Company was created to commercialize.

Based on the evidence presented at trial, the Company is dissolved. Francois Girin is appointed as receiver to wind up the Company's affairs.

## I. FACTUAL BACKGROUND

The factual record in this case is mercifully sparse. Trial lasted only one day. The parties submitted just eleven joint exhibits. They presented live testimony from two fact witnesses, lodged two depositions, and consented to the use of one affidavit. The parties proved the following facts by a preponderance of the evidence.

1

## A. Mir And AgroFresh Develop 1-MCP Technologies.

In 1996, Edward Sisler and Sylvia Blankenship patented 1-MCP.[1] At the time, Nazir Mir was studying how to extend the shelf life of apples using modified atmosphere packaging.[2] As part of his research, he began experimenting with 1-MCP technologies.[3]

In late 2009, Mir entered into discussions with AgroFresh about using 1-MCP in modified atmosphere packaging.[4] One of Mir's contacts at AgroFresh was Lynn Oakes, who will re-emerge in the story later after moving over to Decco.[5]

Through his entity, MirTech, Mir entered into an interim consulting services agreement with AgroFresh dated January 1, 2010. The agreement called for joint ownership of "any and all inventions conceived or reduced to practice jointly by the [p]arties."[6]

---

[1] *See* U.S. Patent No. 5,518,988 (filed June 3, 1994); JX 8 at 17. Citations in the format "[Name] Dep." refer to witness testimony from a deposition transcript. Citations in the form "[Name] Tr." refer to witness testimony from the trial transcript. Citations in this format "PTO ¶ —" are stipulated facts in the pre-trial order. Citations in the form "JX —— at ——" refer to trial exhibits using the JX-based page numbers generated for trial.

[2] Mir Dep. 15–17.

[3] *Id*. at 17–18.

[4] JX 9 at 4; *see* Mir Dep. 29–30.

[5] Mir Dep. 30–33.

[6] JX 9 at 5 (internal quotation marks omitted).

In May 2011, MirTech and AgroFresh replaced the interim agreement with a commercial agreement and a consulting agreement. These agreements granted AgroFresh sole ownership over the parties' joint inventions.[7]

While working with AgroFresh, Mir developed "RipeLock," a modified atmosphere package that used 1-MCP.[8] Mir also developed technology underlying what became U.S. Patent Numbers 8822382, 8802140, 9394216, and 9561894.[9] This decision refers to this intellectual property collectively as the "RipeLock Patents."

## B. The Letter Of Intent

By October 2014, Oakes had moved to Decco from AgroFresh. Decco's primary business involves the post-harvest treatment and packaging of produce.[10] Decco hired Oakes to develop its apple storage business.[11]

---

[7] *Id*. at 5–7.

[8] *See* Mir Dep. 41–43, 53–54.

[9] *See* JX 11 ¶¶ 4(a), 7(a) (Final Consent Judgment where Mir acknowledges and consents to a judgment establishing AgroFresh's ownership of the listed patents). The Final Consent Judgment uses the former title of the '894 patent, U.S. Patent Publication Number 2014/0326620. *See* Public Patent Application Information Retrieval, https://portal.uspto.gov/pair/PublicPair (last visited Nov. 26, 2018) (search application number 13969393).

[10] *See* Girin Tr. 6.

[11] Girin Dep. 15.

3

On October 18, 2014, Oakes met with Mir during a meeting of the Produce Marketing Association in Anaheim, California.[12] Oakes discussed Decco's interest in using 1-MCP for the long-term storage of produce.[13] Within a few days, Mir had entered into a confidentiality agreement with Decco.[14]

Over the next several weeks, Mir had a series of meetings with members of Decco management including Francois Girin, Decco's Chief Executive Officer.[15] The discussions revolved around a potential partnership between MirTech and Decco that would develop post-harvest packaging solutions using 1-MCP.[16] During their initial meeting, Mir informed Girin that MirTech had partnered with AgroFresh to produce RipeLock.[17] Mir did not provide Decco with, and Decco did not ask to see, any of the agreements that Mir or MirTech had with AgroFresh.[18]

On November 30, 2014, Decco and MirTech executed a letter of intent for a joint venture involving the '382 Patent, the '140 Patent, their child applications, and US

---

[12] Mir Dep. 32, 36–38; *see* Girin Tr. 6–7, 42; Mir Tr. 73.

[13] Mir Dep. 37–39 ("Q. What did he explain that Decco was looking for? A. 1-MCP."); Mir Tr. 73.

[14] *See* Mir Dep. 39–40.

[15] Mir Tr. 73; Girin Tr. 42; Mir Dep. 45–46; *see* Girin Dep. 12–16.

[16] Mir Dep. 40, 46, 49, 52; Mir Tr. 73.

[17] Girin Dep. 16–17; *see* Dkt. 46 at 5. *Cf.* Mir Dep. at 41–43, 53–54.

[18] Mir Tr. 74 ("Q. [Y]ou did not provide Decco with a copy of your agreement with Agrofresh, did you? A. That's correct."); *see* Mir Dep. 54–58.

Provisional Patent Application 32077867.[19] The '382 Patent and the '140 Patent were part of the RipeLock Patents.[20] Although Provisional Patent Application '867 was not specifically identified as a RipeLock Patent, Mir testified that this patent application related to the '216 Patent, which was one of the RipeLock Patents.[21] The letter of intent documented the parties' plan "to collaborate in the assessment of the right to practice, ability to register, biological performance, manufacturing cost and commercialization potential of MirTech's 1-MCP 'MPM' technology . . . and other related technologies."[22]

The letter of intent identified three overarching tasks for the joint venture: (i) secure the legal rights of the listed patents; (ii) coordinate research, regulatory approvals, and other pre-commercial activity; and (iii) commercialize the developed technology.[23] To facilitate

---

[19] JX 1; Mir Dep. 53 ("Q. And do you recall when [you signed a letter of intent with Decco]? A. N[ove]mber 30-2014."). The letter of intent was subtitled "Strategic Alliance and Commercialization of MirTech Technologies as Embodied by US 8822382 and US 8802140 Patents, their Child Applications and US Provisional Patent Application 62077867." JX 1 at 1.

[20] *See* JX 11 ¶¶ 4(a), 7(a).

[21] Mir Dep. 60, 101 Provisional Patent Application '867 later expired. *See* Public Patent Application Information Retrieval, https://portal.uspto.gov/pair/PublicPair (last visited Nov. 26, 2018) (search application number 62077867).

[22] JX 1 § 1. Mir testified that "MPM" meant "MirTech proprietary materials." Mir Dep. 61.

[23] *See* JX 1 § 1.

the third task, MirTech would "grant [an] exclusive license to NewCo to use its patents related to 1-MCP technologies and operate as an independent entity."[24]

## C.     The Company And Its Governing Documents

On April 19, 2016, Decco and MirTech formed the Company.[25] Its operating agreement became effective on June 30, 2016 (the "LLC Agreement").[26] Decco and MirTech were the only two members of the Company. Each held a 50% member interest.[27]

The LLC Agreement established a manager-managed structure under which management of the Company was "vested in a Management Committee composed of two members, each of whom shall be a 'Manager.'"[28] The LLC Agreement specified that one manager would be Decco's CEO and the other would be MirTech's President.[29] The only individuals who ever held these positions were Girin and Mir.[30] The LLC Agreement required both managers to be present for a quorum to exist and the consent of both managers for any action that required manager approval.[31]

---

[24] *Id.*; *see also id.* § 7.B. ("MirTech in turn agrees to provide NewCo with exclusive rights to practice [the listed patents].").

[25] PTO ¶ 1.

[26] *Id.*; JX 6.

[27] PTO ¶ 2.

[28] JX 6 § 9.1(a).

[29] PTO ¶ 2; JX 6 § 9.1(a)(1).

[30] PTO ¶ 3.

[31] JX 6 §§ 9.1(b) & (c).

Section 3.1 of the LLC Agreement identified the Company's purpose (the "Purpose Clause"). It provided as follows:

> The intention of the Members in forming the Company is to conduct and coordinate all activities related to chemistry and biology R&D, collaboration with universities and government researchers, regulatory support and registration filings, manufacturing, supply chain activities, strategic marketing and marketing communications related to 1-MCP Products (the "1-MCP Business"). . . .

> The 1-MCP Business does not include, and Decco and the Company acknowledge and agree that MirTech may independently pursue, any technology and business related to flexible packaging for, or in combination with, 1-MCP or relating to microwavable cooking or both ("MirTech Excluded Business").

> In addition to the 1-MCP Business, Decco and MirTech intend for the Company to be the vehicle for development of other technologies proposed by MirTech as well as possibly by Decco . . . from time to time as set forth in Section 6 [(the "Non-1-MCP Business")] below.[32]

The Purpose Clause thus specified that the Company would be pursuing the 1-MCP Business and not the MirTech Excluded Business. At the same time, the Purpose Clause held out the possibility that the Company might in the future pursue a Non-1-MCP Business.

To facilitate the Company's potential pursuit of a Non-1-MCP Business, Section 6 of the LLC Agreement gave Decco a right of first refusal over any non-1-MCP products that MirTech developed, other than the MirTech Excluded Business.[33] In Section 6.1, MirTech agreed to provide Decco with written notice of any technology that MirTech

---

[32] JX 6 § 3.1 (formatting altered for legibility).

[33] *Id.* § 6.1; Mir Dep. 93–94.

developed. After receiving notice, Decco had sixty days to determine whether it wanted to pursue commercialization of the technology through the Company. If Decco exercised its option, then the parties would have 120 days to negotiate a definitive agreement. If Decco did not exercise its right of first refusal, or if the parties could not reach a definitive agreement, then MirTech and Mir would be "free to contract with one or more third parties to license or otherwise commercialize the new technology."[34]

To ensure that the Company could pursue the 1-MCP Business, the LLC Agreement required that MirTech develop and license exclusively to the Company all of the "Licensed Technology."[35] The LLC Agreement defined "Licensed Technology" as

(i) "patents US 8822382 and US 880140, its child applications, and patents which may be granted from United States Patent Application 13/969,393, filed August 16, 2013, Provisional Patent application 62077867 dated November 10, 2014, and Non-provisional patent application 1476004 dated May 29, 2015, and all technologies described in such patents and patent applications,"

(ii) the "know-how and trade secrets for processing and forming products incorporating 1-MCP that meet the impurity standards of US EPA," and

(iii) "all rights granted in the License Agreement as it may be amended from time to time."[36]

---

[34] JX 6 § 6.1.

[35] *See id.* § 4.2(a).

[36] *Id.* App. A at 2.

Patents '382 and '140 were RipeLock Patents.[37] Patent Application '393 became Patent '894, which was a RipeLock Patent.[38] Patent Application '004 became the '216 Patent, which was a RipeLock Patent.[39] Provisional Patent '867 related to the '216 Patent, bringing it within the ambit of a RipeLock Patent.[40]

In the LLC Agreement, however, MirTech represented that it owned the Licensed Technology and that "neither Rutgers University nor any other person has any right, title or interest in the Licensed Technology."[41] MirTech further represented that it "owns the Licensed Technology free and clear of all claims, mortgages, leases, loans and encumbrances."[42] MirTech made additional representations regarding its ownership of the Licensed Technology in the Licensing Agreement, which the LLC Agreement incorporated

---

[37] *See* JX 11 ¶¶ 4(a), 7(a).

[38] *See id.*; Public Patent Application Information Retrieval, https://portal.uspto.gov/pair/PublicPair (last visited Nov. 26, 2018) (search application number 13969393).

[39] *See* JX 11 ¶¶ 4(a), 7(a); Public Patent Application Information Retrieval, https://portal.uspto.gov/pair/PublicPair (last visited Oct. 31, 2018) (search application number 14726004).

[40] *See* Mir Dep. 60, 101. Provisional Patent Application '867 later expired. Public Patent Application Information Retrieval, https://portal.uspto.gov/pair/PublicPair (last visited Oct. 31, 2018) (search application number 62077867). *See generally* Dkt. 46 App. A.

[41] JX 6 § 19.1.

[42] *Id*. § 19.2.

by reference "for the benefit of Decco."[43] The LLC Agreement provided that MirTech's representations "shall survive the execution, delivery, and performance of this Agreement and shall in no way be affected by any investigation of the subject matter thereof."[44]

## D.    The AgroFresh Litigation

In the summer of 2016, the Company began selling TruPick, a product that utilized metal organic framework technology to deliver 1-MCP gas to fruit. The Company never commercialized any other product.[45]

On August 3, 2016, AgroFresh filed suit in the United States District Court for the District of Delaware against Mir, MirTech, Decco, the Company, and their affiliates. In its complaint, AgroFresh claimed to own the RipeLock Patents, which the Company had used to develop TruPick.[46] The District Court bifurcated the case so it could first determine who owned the '216 Patent.[47]

On June 30, 2017, the District Court ruled that AgroFresh was the sole owner of the '216 patent.[48] Put differently, the TruPick technology belonged to AgroFresh.[49] A few days

---

[43] *Id.* § 19.1.

[44] *Id.* § 21.1.

[45] Girin Dep. 25, 33–34.

[46] *See* JX 8 at 24, 30, 44–50.

[47] JX 9 at 2.

[48] *Id.* at 34–35.

[49] *Id.* at 32–34.

later, Mir and Girin agreed on behalf of the Company as its managers to stop all commercial activity related to TruPick.[50]

On September 15, 2017, Mir entered into a settlement agreement with AgroFresh, which called for entry of a final judgment by consent (the "Final Consent Judgment").[51] In the Final Consent Judgment, Mir and MirTech agreed to the entry of judgment against them on twenty different counts of wrongdoing, including claims for fraud, fraudulent inducement, constructive fraud, unfair competition, willful infringement of patent, and misappropriation of trade secrets.[52] Mir and MirTech "agreed to disclose to AgroFresh all inventions, discoveries, or improvements (whether patentable or not) related to [1-MCP] . . . , along with all lab books and other documents concerning such inventions, discoveries or improvements."[53] Mir and MirTech formally acknowledged and agreed that "all such inventions, discoveries, and/or improvements have been automatically assigned to AgroFresh."[54]

---

[50] Girin Dep. 33–37.

[51] Mir Dep. 123–25; *see* Mir Tr. 114–15.

[52] *See* JX 11 ¶¶ 3–7.

[53] *Id.* ¶ 7(q).

[54] *Id.*

On September 18, the District Court approved the Final Consent Judgment and entered it as an order.[55] The Final Consent Judgment established that AgroFresh owned the RipeLock Patents that constituted the Licensed Technology under the LLC Agreement.[56]

In early 2018, Girin contacted Mir. He pointed out that "Essentiv has lost [its] ability to operate, has lost its technology."[57] He suggested that the Company be dissolved. Mir refused.[58]

## E.    This Litigation

On February 12, 2018, Decco filed this action. Decco sought an order (i) dissolving the Company and (ii) appointing Girin as receiver to wind up the Company's affairs.[59] MirTech answered and asserted a two paragraph counterclaim seeking payment of Mir's salary under a consulting agreement and compensation for the development of "QMS technology."[60] Decco moved to strike the counterclaim, and I granted the motion.[61] The case proceeded to trial on the dissolution claim.[62]

---

[55] *Id.*

[56] *See id.* ¶¶ 4(a), 7(a).

[57] Girin Dep. 26.

[58] Girin Tr. 31, 37.

[59] Dkt. 1.

[60] Dkt. 13 at 4.

[61] Dkt. 27.

[62] MirTech now contends that the Company is actually in deadlock. Therefore, Decco's petition for dissolution should be mediated under Section 11 of the LLC

## II.    LEGAL ANALYSIS

Section 18-802 of the Delaware Limited Liability Company Act states: "On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement."[63] A party may obtain dissolution by showing that "the defined purpose of the entity has become impossible to fulfill."[64]

"[T]his court must look to the operating agreement of the LLC to determine the purpose for which it was formed . . . ."[65] "[T]he purpose clause is of primary importance, but other evidence of purpose may be helpful as long as the Court is not asked to engage in speculation."[66]

---

Agreement. Dkt. 51 at 10; *see* JX 6 § 11. Because there is another basis for dissolution, the parties are not obligated to resort to the mediation mechanism. Furthermore, MirTech waived this argument by raising it five months into the litigation. *See, e.g.*, *Nutzz.com, LLC v. Vertrue Inc.*, 2006 WL 2220971, at *8–9 (Del. Ch. July 25, 2006) (finding plaintiff waived right to arbitration by actively participating in litigation before filing notice of arbitration).

[63] 6 *Del. C.* § 18-802.

[64] *In re Arrow Inv. Advisors, LLC*, 2009 WL 1101682, at *2 (Del. Ch. April 23, 2009) (Strine, V.C.); *see Fisk Ventures, LLC v. Segal*, 2009 WL 73957, at *3 (Del. Ch. Jan. 13, 2009) ("[C]ourts have historically looked to the 'business of the partnership and the general partner's ability to achieve that purpose in conformity with the partnership agreement.'" (quoting *PC Tower Ctr., Inc. v. Tower Ctr. Dev. Assocs.*, 1989 WL 63901, at *6 (Del. Ch. June 8, 1989))), *aff'd*, 984 A.2d 124 (Del. 2009) (TABLE).

[65] *Arrow*, 2009 WL 1101682, at *1.

[66] *Meyer*, 2015 WL 3746283, at *4; *see also In re Seneca Invs. LLC*, 970 A.2d 259, 263–64 (Del. Ch. 2008) ("This Court will also not attempt to divine some other business

13

The Company's stated purpose is to (i) "conduct and coordinate all activities" of the 1-MCP Business and (ii) serve as the vehicle for any Non-1-MCP Business if Decco exercises its right of first refusal on new technologies developed by Mir or MirTech.[67] The record establishes that the Company no longer has any 1-MCP Business and will never have any Non-1-MCP Business.

## A.    The 1-MCP Business

The LLC Agreement defines the 1-MCP Business as the business activities "related to the 1-MCP Products."[68] The "1-MCP Products" are "any products or delivery systems that incorporate or deliver 1-MCP."[69]

---

purpose by interpreting provisions of the governing documents other than the purpose clause."); *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *7 (Del. Ch. Sept. 3, 1996) (refusing to read a non-compete into the purpose of the partnership agreement), *aff'd*, 692 A.2d 411 (Del. 1997) (TABLE).

[67] JX 6 § 3.1.

[68] *Id*. As noted, the definition carves out the "MirTech Excluded Business." *Id*. MirTech disputes the meaning of the "MirTech Excluded Business" and contends that it extended to "whatever [Mir] did for AgroFresh." Mir Dep. 41; *see id*. at 182. That is not a credible assertion. The LLC Agreement defines "MirTech Excluded Business" as "any technology and business related to flexible packaging for, or in combination with, 1-MCP or relating to microwavable cooking or both." JX 6 § 3.1. It is true that the definition of MirTech Excluded Business refers to 1-MCP, but giving meaning to this language would conflict with the definition of the 1-MCP Business and the scope of the Licensed Technology. Using functionally equivalent definitions for both the 1-MCP Business and the MirTech Excluded Business makes no sense. The LLC Agreement is not particularly well drafted, and the stray reference to 1-MCP in the definition of MirTech Excluded Business is an example of an occasion where the parties could have been more precise.

[69] JX 6 App. A at 1.

To date, the Company's only product is TruPick, which is a 1-MCP Product. The Company's five-year operating budget, approved by MirTech, identified revenue only from TruPick.[70] The Company has no plans to develop any other products.

The Final Consent Judgment prevents the Company from continuing to sell TruPick.[71] Therefore, the Company has no 1-MCP Business.

To avoid this conclusion, MirTech argues that the Company can still use MirTech's "know-how" and "trade secrets" to conduct a 1-MCP Business. As an example, Mir suggested at trial that he could use his know-how to build a 1-MCP Business based on a patent that expired in August 2018.[72]

The evidence does not support Mir's assertion. In the Final Consent Judgment, Mir and MirTech assigned their "know-how" to AgroFresh. Mir and MirTech also agreed that

---

[70] *See id.* § 4.1(d); *id.* Ex. 4.1(d) (identifying revenue from only "MOF MCP"); Mir Dep. 99 ("Q. And TruPick is the only product listed on the five-year budget; right? A. The commercial plan, yes. . . . Q. Right. All of the sales revenue would come from TruPick. A. Yes."). Before trial, Mir testified that the budget inaccurately accounted for Essentiv's revenue allocation, claiming that "MCP represents 25 percent of the potential revenue . . . 75 percent from non-MCP." Mir Dep. 120. Mir supported his position with no evidence, but only the claim that "Essentiv was created to be a technology incubator." *Id*. at 121. This decision does not credit Mir's testimony.

[71] *See* Mir Dep. 164–65; JX 9 at 34–35. At trial, MirTech suggested that Essentiv may still sell TruPick in countries "not controlled by U.S. intellectual property laws." Girin Tr. 34–36; *see* Mir Dep. 165. That is not a viable avenue. The Final Consent Judgment provides AgroFresh with all ownership rights of the RipeLock Patents "along with all associated technology and related United States, foreign, and international patents and patent applications." JX 11 ¶ 4(a).

[72] *See* Mir Tr. 105.

15

Agrofresh had "helped Mir set up his laboratory to measure 1-MCP accurately and provided him [with] equipment to assist in this effort" and that Mir misappropriated AgroFresh's trade secret information, including "information concerning how to synthesize and measure 1-MCP and how to use a gas chromatograph."[73] At trial, Mir admitted his proposed 1-MCP Business required measuring 1-MCP.[74] Mir did not posit any way to measure 1-MCP without relying on the know-how and trade secrets assigned to AgroFresh.

The evidence establishes that there is no viable 1-MCP Business. It is not reasonably practicable for the Company to carry out this aspect of its business.

## B. The Non-1-MCP Business

The other element of the Company's purpose was to act as a vehicle for potential Non-1-MCP Businesses.[75] Under the LLC Agreement, a Non-1-MCP Business can exist only if Decco exercises its right of first refusal to partner with MirTech in developing a new non-1-MCP product.[76]

It is not reasonably practicable for the Company to pursue a Non-1-MCP Business. Girin made clear at trial that Decco does not trust Mir and will not do business with him in

---

[73] JX 10 ¶¶ 43, 60.

[74] Mir Tr. 121.

[75] JX 6 § 3.1.

[76] *See id*. § 6.1; *see also* Mir Tr. 78–79.

the future.[77] Given the seriousness of the claims to which MirTech admitted,[78] Decco's position is understandable.

MirTech contends that a Non-1-MCP Business exists for two non-1-MCP technologies: "in-transit ripening" and "nano-absorbent films."[79] The only support for this claim is Mir's testimony about discussions he had with individuals at Decco who did not have decision-making authority.[80] Mir conceded that the parties had "never signed any definitive agreements with respect to any non-1-MCP technology."[81]

The evidence establishes that there is no viable Non-1-MCP Business. It is not reasonably practicable for the Company to carry out this aspect of its business.

## III.     CONCLUSION

Decco proved at trial that it is not reasonably practicable for the Company to carry on its business. The Company is therefore dissolved. The only candidate to serve as

---

[77] *See* Girin Tr. 17–18, 70.

[78] *See* JX 11 ¶¶ 3–7.

[79] Mir Tr. 79.

[80] *See* Mir Tr. 85–86. The LLC Agreement states that Decco must agree to pursue any technology. *See* JX 6 § 6.1. Neither of the individuals whom Mir identified had the authority to commit Decco to a Non-1-MCP Business. Mir Tr. 116, 124.

[81] Mir Tr. 79; *see also* Girin Tr. 15–16; Mir Dep 93, 181. Mir testified that before the LLC Agreement was executed, Decco provided two letters of support in connection with MirTech's application for research grants related to the technologies. *See* Mir Tr. 85–86, 90; *see also* Girin Tr. 43, 45. No evidence was submitted to support the testimony or their relationship to a definitive agreement.

receiver is Girin. The parties shall submit a form of order implementing this decision that has been agreed as to form.